# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-563V

|  |  |
|---|---|
| LATRONDA COBLE,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: March 3, 2026 |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Nathaniel Trager, U.S. Department of Justice, Washington, DC, for Respondent.*

### FACT RULING ON ONSET[1]

On April 11, 2024, Latronda Coble filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on October 26, 2022. *See* Pet. at 1, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination, as alleged.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at  https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I.   Relevant Procedural History

Though the parties made a tentative effort to settle this claim, they were ultimately unsuccessful. ECF Nos. 14, 18-20. Respondent filed his Rule 4(c) Report on July 29, 2025, arguing that the medical records do not preponderantly establish the alleged injury began within 48 hours of the subject vaccination, as required for a Table SIRVA. *Id.* at 5-6 (internal citations omitted). Petitioner has not filed any documents in response. The issue of onset is thus ripe for resolution.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Lowrie*, 2005 WL 6117475, at *19.

The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998). The Court later outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014). The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## III.    Relevant Factual Evidence

I make this finding of fact after a complete review of the record, including all medical records, declarations, and additional evidence filed, and in particular the following:[3]

- Petitioner received the subject flu vaccine in her right shoulder on October 26, 2022, at her place of employment (i.e., a local hospital where she worked as a labor and delivery nurse). Ex 1 at 3.

- On November 30, 2022 (thus 35 days post vaccination), Petitioner had a visit with a primary care physician ("PCP") to establish a treatment relationship. Ex. 5 at 7. Petitioner complained of "sore joints in her fingers," which began "a couple of months" prior. *Id.* She also reported shortness of breath and palpitations. *Id.* Petitioner made no report of pain in her right shoulder. *See id.* at 7-9. The physical examination did not reveal musculoskeletal edema or other issues. *Id.* at 8.

- On December 22, 2022, Petitioner contacted her PCP's office reporting "having continued pain in her [right] arm/shoulder since getting the flu vaccine in Sept. [sic]." Ex. 5 at 11. Petitioner also stated that "the pain radiates down to her elbow." *Id.* The PCP gave Petitioner an order for an x-ray of her shoulder, which was normal. *See id.*; *see also* Ex. 4 at 9.

---

[3] While I have reviewed all the evidence filed to-date in this case, only evidence related to onset will be discussed herein, though other facts may be provided as necessary.

- Petitioner saw an orthopedist on January 30, 2023. Ex. 2 at 21. The visit notes contain a "reviewed problems" list, including pain of the right shoulder joint "[o]nset: 01/30/2023" and impingement syndrome of the right shoulder region "[o]nset: 01/30/2023." *Id.* Despite these notations, the "assessment/plan" for this visit states that Petitioner had "some right shoulder pain and night pain after a flu vaccine injection on October 26." *Id.* at 22. Petitioner exhibited reduced range of motion ("ROM") and symptoms consistent with acute impingement syndrome upon examination. *Id.* The orthopedist administered a steroid injection to Petitioner and referred her to physical therapy ("PT"). *Id.*

- On February 6, 2023, Petitioner had an initial PT evaluation. Ex. 8 at 21. The date of onset was listed as "10/26/22." *Id.* Petitioner reported "onset of R shoulder pain and stiffness follow[ing] a flu shot at work on 10/26/2022." *Id.* She also stated that "her achy pain following her injection never improved as it normally does." *Id.* She described the localization of her pain and noted that it is in the "L [sic] upper arm deltoid with intermittent pain that radiates to her elbow." *Id.* Petitioner attended six PT sessions between February 6–22, 2023. *Id.* at 21-36.

- At the final PT session on February 22, 2023, Petitioner stated she had "no pain. Hasn't had pain in a while." Ex. 8 at 27. Petitioner thereafter cancelled her remaining PT sessions due to "financial reasons." *Id.* at 26.

- On April 13, 2023, Petitioner had a follow-up visit with her orthopedist. Ex. 2 at 19. At this visit, she reported her pain was "doing better" and was "pretty much gone." *Id.* at 20. The orthopedist noted that Petitioner's right shoulder ROM was "much improved" upon examination and "the tenderness is basically gone." *Id.* Petitioner was instructed to continue with home exercises and to follow up if needed. *Id.*

- Approximately six months post-vaccination, on May 4, 2023, Petitioner returned to her orthopedist with complaints of neck and ongoing right shoulder pain. Ex. 2 at 17. A physical examination showed positive impingement and Spurling signs on the right side. *Id.* at 18. The orthopedist ordered an MRI of the right shoulder and cervical spine to rule out a cervical radiculopathy issue. *Id.*

- Petitioner saw another treater at her orthopedist's office on May 25, 2023, to review her recent MRI results. Ex. 2 at 14. The orthopedist noted

4

Petitioner's history in that she "started having symptoms several weeks ago when she had a flu shot." *Id.* The MRI was felt to be consistent with mild subacromial bursitis and mild acromioclavicular joint arthritis. *Id.* at 15. Petitioner's physical examination showed "excellent" ROM and negative impingement signs. *Id.* The orthopedist recommended Petitioner return to her strengthening program and prescribed Meloxicam, as needed. *Id.*

- Less than nine months post vaccination, on July 10, 2023, Petitioner attended her final follow-up visit with her orthopedist. Ex. 2 at 13. She reported that her shoulder was "doing a lot better" and she was "able to do more activities than she had been doing." *Id.* A physical examination showed improvement in ROM and "excellent rotator cuff strength." *Id.* The orthopedist recommended Petitioner continue with her strengthening program and to return if needed. *Id.*

- In her affidavit (authored in June 2024), Petitioner attests that when she received the subject vaccination, she "[i]mmediately" thought "this was the first time [she] ever received a flu vaccine that was unusually uncomfortable and painful." Ex. 7 ¶ 5. Petitioner states that her "right shoulder was sore after the intramuscular injection." *Id.* ¶ 6. And, "instead of the pain subsiding, the pain worsened from that point forward." *Id.*

- Petitioner also recalls that "two days after the flu vaccine," she "still felt pain and discomfort on the surface and deep into [her] muscle at the injection site," plus an achy and throbbing sensation. Ex. 7 ¶ 7. She expected the pain to resolve as she recalled with previous flu vaccines, but the "achy and throbbing feeling never subsided." *Id.* Thus, activities of daily living ("ADLs") became difficult within the week following vaccination; she therefore scheduled an appointment but had to wait weeks to be seen, as a result of being a new patient. *Id.* ¶¶ 9-10.

- No other medical record or affidavit evidence regarding the onset of Petitioner's post-vaccination shoulder injury has been filed.

## IV.   Finding of Fact Regarding Onset

A petitioner alleging a SIRVA claim must show that she experienced the first symptom or onset of pain within 48 hours of vaccination. 42 C.F.R. § 100.3(a)(XIV)(B); 42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria). Respondent contends that Petitioner cannot establish this criterion because her most contemporaneous medical records from 35 days post-vaccination revealed a normal musculoskeletal physical examination. Rule 4(c)

5

Report at 5 (internal citations omitted). And, while she complained of joint pain in her hands during that visit, she failed to mention right shoulder complaints. *Id.* Respondent asserts it is "highly implausible" that a nurse would not have mentioned right shoulder issues had she been experiencing them for over a month, as alleged in her affidavit. *Id.* More so, Respondent asserts that when she did report pain, she did not describe onset within 48 hours of vaccination. *Id.* at 6.

The totality of the evidence favors Petitioner's onset contentions. The aforementioned medical records establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, that she sought treatment within *less than two months* of the vaccination, and that she indeed was experiencing symptoms in the relevant timeframe.

The fact that Petitioner sought treatment within two months of the subject vaccination (on December 22, 2022), actually helps Petitioner in establishing Table-consistent onset. In other cases, even *much greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). The delay here is not nearly as long.

In fact, some delay in seeking treatment itself is never *per se* evidence of a non-conforming onset. As I have previously noted, SIRVA petitioners often put off seeking shoulder-related care based on the reasonable assumption that the pain is normal and will resolve on its own over time, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain. This appears to have been (at least partially) the case here, with Petitioner explaining that she expected the pain to resolve as she recalled with previous flu vaccines, but the "achy and throbbing feeling never subsided." Ex. 7 ¶ 7.

Likewise, the fact that Petitioner sought care on one occasion post-vaccination without mentioning right shoulder pain does not fully detract from her arguments on onset. For instance, Petitioner's November 30, 2022 PCP visit was to establish care and to discuss joint pain, as well as acute issues including shortness of breath and heart palpitations. Ex. 5 at 7. While it would have been somewhat reasonable for Petitioner to have mentioned right shoulder complaints to this type of general practitioner, especially

if discussing joint pain in other areas, I do not find this omission to preclude a successful two-day onset showing. Likewise, although Petitioner had an otherwise-normal musculoskeletal examination during this visit, I do not find this to be wholly detrimental to her onset contentions, as the evaluation appears to have looked for edema, rather than evaluating the features of a SIRVA (i.e., ROM limitations and pain). *See id.* at 8.

In addition, Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the December 22, 2022, treatment encounter, at which time she reported "having continued pain in her [right] arm/shoulder since getting the flu vaccine in Sept. [sic]." Ex. 5 at 11. This entry does not preponderantly support Table onset on its own, as it contains reference to an incorrect month of vaccination (i.e., September versus October), but other subsequent medical records consistently corroborate this entry with more detail and thus provide support for Table-compliant onset. *See,* e.g., Ex. 8 at 21 (a February 6, 2023 PT visit listing onset as "10/26/22" and describing "onset of R shoulder pain and stiffness follow[ing] a flu shot at work on 10/26/2022 . . . [that] never improved as it normally does.").

Admittedly, while there is one record entry (from Petitioner's January 30, 2023 orthopedist visit) containing a notation listing the onset date as the date of that appointment, "01/30/2023," it is insufficient to overcome the bulk of evidence that favors Petitioner on onset. Ex. 2 at 21. In fact, the same record includes a summary that Petitioner experienced "some right shoulder pain and night pain after a flu vaccine injection on October 26." *Id.* at 22. This record entry is therefore consistent with her other reports of pain beginning on October 26, 2022, and thus on the same day as her receipt of the subject vaccination.

At least one of Petitioner's records suggest an onset beginning at some unspecified time after a vaccination. *See* Ex. 2 at 14 (a May 25, 2023 visit with a second orthopedist noting she "started having symptoms several weeks ago when she had a flu shot."). But I do not find this evidence alone negates Petitioner's earlier reports supportive of an onset on October 26th, as it is otherwise consistent with her other reports of pain beginning after a flu vaccination and provides further support for a close-in-time onset. The contemporaneous medical records thus establish that the onset of Petitioner's injury occurred within the two-day timeframe required by the Table.

### Conclusion

Petitioner has provided preponderant evidence that the onset of her shoulder pain occurred within 48 hours of vaccination.

I encourage the parties to make a final re-attempt at informal resolution (of settlement or damages). **Respondent shall file, by no later than <u>Thursday, April 02, 2026</u>**, a status report concerning how he intends to proceed, including, if appropriate, whether he would like to file an amended Rule 4(c) Report and/or whether he is otherwise willing to entertain a renewed settlement demand from Petitioner.

In the event Respondent is open to informal resolution of either settlement or damages, and to aid in those discussions, the parties should keep in mind that the record supports a mild injury overall, requiring fairly conservative treatment for a limited duration *that likely did not exceed nine months post vaccination*. Petitioner participated in six PT sessions, received one steroid injection (that provided some relief), and did not undergo surgery. Moreover, by the winter into spring 2023, she reported her shoulder pain had subsided, was "doing better," and was "pretty much gone." *See,* e.g., Ex. 2 at 19-22; Ex. 8 at 27. Petitioner should thus not expect more than a modest pain and suffering award (likely not to exceed $50,000.00), even at full value of this case.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master